# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MONICA WOODY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:20CV918 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Monica Woody, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 10 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 17; see also Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 18 (Defendant's Memorandum); Docket Entry 19 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 202-05), alleging a disability onset date of June 7, 2018 (see Tr. 202).[2] Upon denial of that application initially (Tr. 99-109, 127-35) and on reconsideration (Tr. 110-22, 137-44), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 136). Plaintiff, her non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 32-76.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 198-201), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2023.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since June 7, 2018, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: degenerative disc disease, lumbar and cervical; radiculopathy; obstructive sleep apnea; hypertension; diabetes mellitus; migraines/headaches; Arnold Chiari malformation; left carpal tunnel syndrome; insomnia; obesity; and chronic pain syndrome.

---

[2] Plaintiff previously applied for DIB and Supplemental Security Income ("SSI") in April 2016 (see Tr. 90), and an ALJ awarded a closed period of benefits from April 10, 2015, to May 1, 2017 (see Tr. 86-98).

2

. . .

4.  [Plaintiff] does not have an impairment or
combination of impairments that meets or medically equals
the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5.  . . . [Plaintiff] has the residual functional
capacity to perform light work . . . except frequently
push/pull and operate foot and hand controls with the
lower and upper extremities; occasionally climb ramps or
stairs; never climb ladders, ropes or scaffolds;
occasionally balance, stoop, kneel, crouch, and crawl;
frequently reach, handle objects, finger, and feel
bilaterally; occasionally reach overhead bilaterally;
occasional exposure to extreme heat; occasional exposure
to vibration; occasional exposure to loud noise; no
exposure to very loud noise; no exposure to unprotected
heights; and occasional exposure to hazardous machinery
or hazardous moving mechanical parts. [Plaintiff] would
be off task no more than 10% of the time in an 8-hour
workday, in addition to normal breaks (with normal breaks
defined as a 15 minute morning and afternoon break and a
30 minute lunch break).

. . .

6.  [Plaintiff] is capable of performing past relevant
work as a manager trainee, fast food service, and a
manager, industrial cafeteria.  This work does not
require the performance of work-related activities
precluded by [Plaintiff]'s residual functional capacity.

. . .

In the alternative, considering [Plaintiff]'s age,
education, work experience, and residual functional
capacity, there are jobs that exist in significant
numbers in the national economy that [she] can perform.

. . .

3

>       7.   [Plaintiff] has not been under a disability, as
>       defined in the . . . Act, from June 7, 2018, through the
>       date of this decision.

(Tr. 17-26 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).

4

"It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981),

5

and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."

---

[3] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

<u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." <u>Hines</u>, 453 F.3d at 562-63.

work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignment of Error

In Plaintiff's sole issue on review, she alleges that "[t]he ALJ failed to adequately account for the vocationally limiting effects of Plaintiff's chronic migraines in the RFC." (Docket Entry 15 at 4 (bold font and single-spacing omitted); see also Docket Entry 19 at 1-4.) More specifically, Plaintiff points to her "testi[mony] that she stopped working in June 2018 when her headaches started getting worse" (Docket Entry 15 at 4 (citing Tr.

---

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

51)), that "she experiences headaches at least four days a week [which] affect[] both her thinking and her daily functioning" (id. (citing Tr. 52-53)), and "that she lies down during the day . . . to keep her headaches from coming on" (id. (citing Tr. 61)). Plaintiff further contends that "the record contains ample documentation of [her] migraines." (Id. at 7; see also id. at 7-8 (detailing evidence Plaintiff believes documents severity and limiting effects of her headaches (citing Tr. 281, 284, 291, 296, 336, 356, 358, 377, 382, 391, 395, 409, 417, 420, 428)).) Plaintiff asserts that, "[d]espite that testimony [and evidence], the ALJ did not find [Plaintiff] disabled due to the work absences her migraines would cause[, but i]nstead[ ] included no absences in the RFC and only 'no more than 10%' off-task time and occasional exposure to noise." (Id. at 5 (quoting Tr. 20).)

According to Plaintiff, "[t]he ALJ's reasoning . . . is unclear," because "[t]he ALJ 'failed to build an accurate and logical bridge from the evidence to his conclusion'" (id. (quoting Monroe v. Colvin, 826 F.3d 176, 189-90 (4th Cir. 2016)); see also id. (citing Porterfield v. Berryhill, No. 1:18CV319, Docket Entry 18 at 7 (M.D.N.C. Aug. 6, 2019) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 23, 2019) (Schroeder, C.J.))), and "d[id] not explain how the 10% off task finding was calculated" (id. at 6; see also id. at 6-7 (citing Lanigan v. Berryhill, 865 F.3d 558, 563 (7th Cir. 2017), Gross v.

9

<u>Saul</u>, No. 1:20CV294, Docket Entry 18 at 9 (M.D.N.C. May 12, 2021) (Webster, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 28, 2021) (Biggs, J.), <u>June S. v. Commissioner of Soc. Sec.</u>, No. 19CV1514, 2020 WL 7137041, at *3 (W.D.N.Y. Dec. 7, 2020) (unpublished), <u>Holland v. Commissioner of Soc. Sec. Admin.</u>, Civ. No. 17-1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished), and <u>Lobbes v. Colvin</u>, No. 4:13CV57, 2014 WL 1607617, at *20 (S.D. Ind. Apr. 22, 2014) (unpublished))). Plaintiff's contentions miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations. <u>Hines</u>, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. <u>See</u> <u>Hines</u>, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). <u>See</u> 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. <u>See</u> 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. <u>See</u> <u>Reid v. Commissioner of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an

10

accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). Here, the ALJ's decision supplies the necessary "accurate and logical bridge," id. at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's "migraines/headaches" (A) qualified as "severe" (Tr. 17) but (B) would not cause Plaintiff to miss work or to suffer off-task time greater than ten percent of an eight-hour workday (see Tr. 20).

The ALJ's evaluation of the opinion evidence explains the headache-based limitations in the RFC. In that regard, the ALJ found "generally persuasive" the opinions of the state agency medical consultants "limiting [Plaintiff] to light work with environmental restrictions" (Tr. 24; see also Tr. 105-06, 118-19), but added more specific noise restrictions and an allowance to remain off-task for up to ten percent of the workday (see Tr. 20), to further account for Plaintiff's headaches (see Tr. 24). Moreover, none of Plaintiff's medical providers opined that Plaintiff's headaches necessitated any limitations (let alone limitations greater than reflected in the RFC), which significantly undermines Plaintiff's argument, see Pineda v. Astrue, 289 F. App'x 710, 713 (5th Cir. 2008) (holding that "ALJ properly noted[ that] the record d[id] not contain any specific opinions from treating or examining physicians, based on objective evidence, indicating that

[the plaintiff] ha[d] limitations greater than those determined by the ALJ"); <u>Nava v. Berryhill</u>, No. 8:17CV2412, 2019 WL 92620, at *6 (M.D. Fla. Jan. 3, 2019) (unpublished) ("Importantly, the ALJ noted that the record does not contain any opinions from treating/examining doctors . . . that the [p]laintiff has limitations greater than the RFC."); <u>Charrette v. Commissioner of Soc. Sec.</u>, No. CV 15-10930, 2016 WL 7985332, at *8 (E.D. Mich. Aug. 4, 2016) (unpublished) (rejecting the plaintiff's argument that "RFC determination failed to account for exertional limitations resulting from severe fatigue, pain, and bilateral ankle impairment" where "ALJ appropriately noted[ that] the record d[id] not contain any opinions from treating or examining physicians indicating that the claimant [wa]s disabled or even ha[d] limitations greater than those determined in th[e] decision"), <u>recommendation adopted</u>, 2016 WL 4561333 (E.D. Mich. Sept. 1, 2016) (unpublished); <u>Ortman v. Commissioner of Soc. Sec.</u>, No. 2:14CV1900, 2016 WL 2595111, at *2 (S.D. Ohio May 5, 2016) (unpublished) ("[S]ignificantly, the record contains no medical opinion of greater limitations than those that the [ALJ] included in her RFC determination.").

Plaintiff asserts that the ALJ "d[id] not explain how the 10% off task finding was calculated" (Docket Entry 15 at 6), and notes that "the VE testified that if [Plaintiff] were off task 15% or more of the workday, she would be unemployable" (<u>id.</u> (citing Tr.

75)).  According to Plaintiff, "[g]iven its outcome determinative importance, [the off-task finding] needs to be explained." (Id. at 7 (citing Lanigan, 865 F.3d at 563, Gross, No. 1:20CV294, Docket Entry 18 at 9, June S., 2020 WL 7137041, at *3, Holland, 2018 WL 1970745, at *10, and Lobbes, 2014 WL 1607617, at *20).)

In the cases cited above, the courts could not discern the basis for the ALJ's time off-task limitation.  See Lanigan, 865 F.3d at 563 ("[T]he ALJ made no effort to build an accurate and logical bridge between the no more than 10% finding and the [state agency] psychologists' general assessment that [the plaintiff] exhibits moderate difficulty in [certain mental functions]." (quotation marks and citation omitted)); Gross, No. 1:20CV294, Docket Entry 18 at 10 ("[T]he ALJ failed to explain how, despite [the p]laintiff's mild limitation[] in remembering and applying information and moderate limitation in concentrating, persisting, or maintaining pace, he could remain on task for 90% of a workday."); June S., 2020 WL 7137041, at *3 ("[T]he ALJ's finding that [the p]laintiff would be off-task ten percent of the workday is not rooted in any particular medical evidence or opinion."); Holland, 2018 WL 1970745, at *10 ("[W]ithout further explanation, th[e c]ourt cannot ascertain how the ALJ assessed [the p]laintiff[']s difficulties in staying on task, and how those difficulties impacted the RFC assessment."); Lobbes, 2014 WL 1607617, at *20 ("The ALJ [] failed to explain why he equated the

13

facts to a five percent reduction as opposed to the 10% reduction he contemplated (or, for that matter, any other number).”). Notably, in two of the above-cited cases, the ALJ found that the claimant would remain off-task <u>ten</u> percent of an eight-hour workday, a precise number which fell below what the VE deemed work-preclusive for unskilled work, <u>see</u> <u>Gross</u>, No. 1:20CV294, Docket Entry 11 at 66, Docket Entry 18 at 3; <u>June S.</u>, 2020 WL 7137041, at *2; <u>see also</u> <u>Lovato v. Berryhill</u>, No. 6:16CV46, 2017 WL 2371096, at *4 (D. Or. May 9, 2017) (unpublished) (“[T]he [c]ourt is unable to discern what substantial evidence supported the ALJ’s conclusion that [the] plaintiff would be off task 9% of the time, beyond the VE’s testimony that a larger percentage would necessitate a finding of disability.”), <u>recommendation adopted</u>, 2017 WL 2369377 (D. Or. May 31, 2017) (unpublished).

Here, in contrast, the ALJ did not assign a precise percentage of time Plaintiff would remain off-task, instead finding that she “would be off task <u>no more than 10%</u> of the time in an 8-hour workday.” (Tr. 20 (emphasis added).) In other words, the ALJ found that Plaintiff’s headaches (as well as her insomnia and obstructive sleep apnea) caused <u>some</u> limitation in her ability to remain on-task but not <u>disabling</u> limitations. (<u>See</u> Tr. 24 (“[Plaintiff’s] migraines/headaches are specifically addressed by the noise an off task limitations. . . . Her insomnia and obstructive sleep apnea contribute to her . . . time off task

14

limitations."); see also Tr. 23 ("[T]he record documents that [Plaintiff] suffers from impairments[] which . . . do cause certain limitations[; h]owever, the record does not establish that [her] limitations are disabling.").) That determination coheres with the ALJ's other findings that A) Plaintiff suffered from severe "migraines/headaches" (Tr. 17), B) her headaches did not meet or medically equal the severity of any listings (see Tr. 19), C) her "statements concerning the intensity, persistence and limiting effects of [her] symptoms" (Tr. 21), including her testimony that her headaches occurred four days a week and "interfere[d] with her ability to focus, impact[ed] her thinking, and cause[d] her pain" (id.; see also Tr. 53), "[we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 21), and D) Plaintiff "reported . . . that her medication had been helpful in decreasing her headaches" (Tr. 22; see also Tr. 387). Under such circumstances, the Court can trace the path of the ALJ's reasoning for finding Plaintiff would remain off-task for up to ten percent of a workday. See Link v. Saul, No. 1:19CV662, 2020 WL 5044038, at *9 (M.D.N.C. Aug. 26, 2020) (unpublished) (holding that ALJ's findings at step two of SEP, analysis of Plaintiff's subjective symptom reporting, and evaluation of objective evidence "adequately explained the RFC's allowance for [the p]laintiff to remain off-task for up to 10 percent of the workday in addition to normal

breaks"), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 10, 2020) (Biggs, J.).

The ALJ's analysis of Plaintiff's subjective symptom reporting further explains the RFC's headache-based limitations. The ALJ acknowledged Plaintiff's testimony regarding "having headaches at least 4 days a week that interfere[d] with her ability to focus, impact[ed] her thinking, and cause[d] her pain" (Tr. 21), but found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (id.). The ALJ also noted Plaintiff's daily activities, observing that, despite complaints of disabling headache pain, Plaintiff remained able to drive, take her daughter to school every day, complete some household chores with her daughters' help, occasionally watch television, attend church, and grocery shop with her family. (See Tr. 21; see also Tr. 23 (finding RFC "supported by the objective medical evidence, to include imaging and laboratory test results and physical and mental status examinations, the treatment notes, and the other evidence of record, to include [Plaintiff]'s daily activities" (emphasis added)).) Furthermore, the ALJ commented on the type and effectiveness of Plaintiff's headache treatment, observing that, "[i]n January 2019, [Plaintiff] reported daily headaches that had improved in severity since starting daily prevention medication"

16

(Tr. 22), as well as that, "[i]n May 2019, [Plaintiff] reported having about <u>one</u> headache per week and that her medication had been helpful in decreasing her headaches" (<u>id.</u> (emphasis added); <u>see also</u> Tr. 24 ("Medications were generally effective in controlling or reducing [Plaintiff]'s symptoms.")). Plaintiff challenges the ALJ's analysis of Plaintiff's subjective symptom reporting on three fronts, none of which carry the day.

First, Plaintiff faults the Commissioner for "attempt[ing] to frame this case as one where the ALJ pointed to negative findings which would provide support for his RFC" (Docket Entry 19 at 1 (citing Docket Entry 18 at 9-16)), and deems the Commissioner's arguments in that regard a "post hoc rationalization" (<u>id.</u> (citing, <u>inter alia</u>, <u>Arakas v. Commissioner of Soc. Sec.</u>, 983 F.3d 83, 109 (4th Cir. 2020))). Plaintiff, however, makes no attempt to point out which of the Commissioner's statements on the eight pages of her Memorandum Plaintiff cited constitute a "post hoc rationalization." (<u>Id.</u>) That failure precludes relief. <u>See</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); <u>Hughes v. B/E Aerospace, Inc.</u>, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do."). Furthermore, a review of the

Commissioner's arguments demonstrates that she confined her statements to findings either actually made by the ALJ or reasonably implied by his more general statements. (See Docket Entry 18 at 10-16.) The Court should thus not find that the Commissioner's arguments amount to impermissible post hoc rationalizations.

Second, Plaintiff maintains that "reliance on unremarkable diagnostic studies and normal physical examinations is misplaced" (Docket Entry 19 at 1), because "migraines are not generally detectable through objective testing or physical examinations" (id. (citing Eden v. Berryhill, No. 2:16CV3703, 2017 WL 1404380, at *19 (S.D.W. Va. Mar. 28, 2017) (unpublished), recommendation adopted, 2017 WL 1398341 (S.D.W. Va. Apr. 18, 2017) (unpublished), Harrington v. Colvin, No. 7:17CV20, 2016 WL 320144, at *4 (E.D.N.C. Jan. 4, 2016) (unpublished), recommendation adopted, 2016 WL 311284 (E.D.N.C. Jan. 25, 2016) (unpublished), and Taylor v. Astrue, No. 7:10CV149, 2011 WL 2669295, at *4 (E.D.N.C. May 23, 2011), recommendation adopted, 2011 WL 2669290 (E.D.N.C. Jul. 7, 2011) (unpublished))). According to Plaintiff, "[a] migraine is a primary headache, meaning that it isn't caused by a different medical condition," and "there's no blood test or imaging study to diagnose it." (Id. at 2 (quoting Cleveland Clinic, Migraine Headaches, https://my.clevelandclinic.org/health/diseases/5005-migraine-headaches).) Plaintiff further notes that "the hallmarks

18

of migraines are intense pain, photophobia, phonophobia, nausea[, ] vomiting[, and] . . . sometimes an 'aura' such as wavy lines and other such visual disturbances." (Id.)  Plaintiff points out that the Fourth Circuit recently held that "'ALJs may not rely on objective medical evidence (or the lack thereof) — even as just one of multiple factors — to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence,'" as such "'[o]bjective indicators . . . simply have no relevance to the severity, persistence, or limiting effects'" of Plaintiff's migraines. (Id. at 3 (quoting Arakas, 983 F.3d at 97-98, and citing Strickland v. Barnhart, 107 F. App'x 685, 689 (7th Cir. 2004)).)

The record does not support Plaintiff's assertion that the above-quoted rule from Arakas applies in her case.  Unlike the plaintiff's undisputed fibromyalgia diagnosis in Arakas, see Arakas, 983 F.3d at 91, the record here contains conflicting evidence as to the cause of Plaintiff's headaches.  In that regard, Plaintiff complained to her primary care provider of headaches in August 2018 (see Tr. 334), and the provider assessed "Arnold-Chiari malformation" and referred Plaintiff to a neurologist, advising Plaintiff that, "with Chiari, headache is one of the most common issues as [it] is with high [blood pressure]" (Tr. 336 (emphasis added); see also Tr. 361-75, 434-51 (follow-up treatment with primary care providers reflecting assessments of "Arnold-Chiari

19

malformation" and "[a]cute non intractable <u>tension-type</u> headaches" as well as reflecting that Plaintiff's "[s]ymptoms of <u>high blood pressure</u> included headache" (emphasis added) (parentheses omitted))).[7] Plaintiff's treating neurologists, in turn, diagnosed "[h]eadaches/history of Chiari malformation" (Tr. 284; <u>see also</u> Tr. 379, 384), and a neurosurgeon assessed "mild Chiari I malformation" (Tr. 357). At an emergency room visit in September 2018, Plaintiff complained of a bad headache in the setting of 176/99 blood pressure (<u>see</u> Tr. 293), and the physician diagnosed "[h]eadache" and "Arnold-Chiari malformation," although he provided Plaintiff with instructions entitled "Migraine Headache" (Tr. 296).

In May 2019, Plaintiff's neurologists first mentioned "migraines" in a list of conditions for which Plaintiff sought treatment (Tr. 387; <u>see also</u> Tr. 391 (repeating that verbiage in June 2019), 394-95 (diagnosing "chronic migraine without aura" (capitalization omitted))), but Plaintiff's pain management providers did not diagnose migraines (<u>see</u> Tr. 407, 416, 417, 423-24, 428-29, 563-64). Consistent with the possibility that <u>objectively</u> shown conditions such as Chiari malformation caused

---

[7] "Chiari malformations are structural defects in the base of the skull and cerebellum, the part of the brain that controls balance. Normally the cerebellum and parts of the brain stem sit above an opening in the skull that allows the spinal cord to pass through it (called the foramen magnum). When part of the cerebellum extends below the foramen magnum and into the upper spinal canal, it is called a Chiari malformation []." National Inst. of Neurological Disorders & Stroke, Chiari Malformation Fact Sheet, available at http://www.ninds.nih.gov/Disorders/Patient-Caregiver-Education/Fact-Sheets/Chiari-Malformation-Fact-Sheet#%20241883087 (last accessed on December 20, 2021).

Plaintiff's headaches, the ALJ properly noted objective findings made by Plaintiff's providers while treating her Chiari malformation. (See Tr. 21 (noting September 2018 brain MRI showing mild Chiari malformation and no change since Plaintiff's prior brain MRI in 2015), 21-22 (noting normal cranial nerves, no tremor, normal coordination, gait, and station, negative Romberg, and intact sensation)).) Thus, the record does not establish that Plaintiff's headaches constituted a "disease that does not produce [objective medical] evidence," Arakas, 983 F.3d at 97, or that the ALJ erred by considering objective evidence in assessing the limiting effects of Plaintiff's headaches.

Third, Plaintiff additionally faults the ALJ for "'consider[ing] the type of activities [Plaintiff] c[ould] perform without also considering the extent to which she c[ould] perform them.'" (Docket Entry 19 at 4 (quoting Woods, 888 F.3d at 694, and citing Arakas, 983 F.3d at 100-01).) According to Plaintiff, "[b]eing able to carry out some degree of daily activity on days when she does not have a headache is not inconsistent with an inability to sustain full-time work activity due to her headaches" (id. (citing Arakas, 983 F.3d at 101)), and "the ALJ offer[ed] no explanation as to how those activities demonstrate[d] that [Plaintiff] can persist through an entire 8-hour workday five days a week" (id. (citing Arakas, 983 F.3d at 100)). That contention falls short for two reasons.

First, the ALJ did not rely <u>solely</u> on Plaintiff's daily activities to discount her subjective symptom reports, but rather as one part of his overall analysis. (<u>See</u> Tr. 20-24.) Second, the ALJ did not overstate Plaintiff's daily activities, acknowledging that she could complete only some household chores <u>with her daughters' help</u>, <u>occasionally</u> watched television, and grocery shopped <u>with her family</u>. (<u>See</u> Tr. 21; <u>see also</u> Tr. 60-62, 69, 240-42.) Plaintiff's ability to engage in such activities, even on a limited basis, provides <u>some</u> support, along with the medical and opinion evidence discussed by the ALJ, for the ALJ's conclusion that Plaintiff's headaches did not prevent her from performing a limited range of light work with restrictions on exposure to noise and allowance for time off-task (<u>see</u> Tr. 20).

In short, Plaintiff's sole assignment of error fails as a matter of law.

### III. <u>**CONCLUSION**</u>

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 14) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 17)

be granted, and that this action be dismissed with prejudice.


                                    /s/ L. Patrick Auld
                                 **L. Patrick Auld**
                         **United States Magistrate Judge**


January 4, 2022